# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| **United States of America,**<br>Plaintiff/Respondent<br>-vs-<br>**Leslie Charles Cohen,**<br>Defendant/Movant | CV-08-1888-PHX-JAT (JRI)<br>CR-03-0342-PHX-JAT<br><br>**REPORT & RECOMMENDATION**<br>**On Motion to Vacate, Set Aside, or**<br>**Correct Sentence**<br>**Pursuant to 28 U.S.C. § 2255** |

## I. MATTER UNDER CONSIDERATION

Movant, following his conviction in the United States District Court for the District of Arizona, filed an Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on November 17, 2008 (#6). In addition, Petitioner filed a Memorandum in Support on November 20, 2008 (#7). On March 4, 2009, Respondent filed its Response (#14). Movant filed a Reply on March 25, 2009 (#15).

The Movant's Motion is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases , Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. PROCEEDINGS AT TRIAL

On April 3, 2003, Movant was indicted in the District of Arizona for various offenses, including bank fraud (CR#1). (Filings in the criminal case, CR-03-342-PHX-JAT, are referenced herein as "CR#___.") On September 16, 2003, a Superseding Indictment (CR#39) was filed. Following commencement of trial on January 29, 2004 (M.E. 1/29/04,

CR#153), a mistrial was granted on February 3, 2004 (M.E. 2/3/04, CR#157). Movant again proceeded to trial, *pro se* with advisory counsel, and on April 5, 2004, a jury convicted Movant of bank fraud, aiding and abetting, false statements to a bank, misuse of a social security number, and fraud in connection with identification information, and the jury directed forfeiture of various assets. (Verdicts, CR#263.) On February 22, 2005, the Court sentenced Movant to concurrent terms of imprisonment of 108 months and 60 months, to be followed by 5 years of supervised release. (Judgment, CR#399.)

## C. PROCEEDINGS ON DIRECT APPEAL

Movant filed a direct appeal through counsel, arguing: (1) a denial of his right to self-representation; (2) denial of equal protection by denial of free transcript; and (3) an unlawful search of his home. On December 12, 2007, the Ninth Circuit issued a mandate and Memorandum Decision (CR#469) affirming Movant's conviction and sentence.

## D. PRESENT FEDERAL HABEAS PROCEEDINGS

Movant commenced the present federal habeas proceeding by filing his original Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on October 14, 2008. That Motion was denied with leave to amend (#4), and on November 17, 2008, Movant filed the instant Amended Motion to Vacate, Set Aside, or Correct Sentence (#6). On November 20, 2008, Movant filed a Memorandum (#7) in support of his Motion, and on January 9, 2009 Exhibits (#10) in support. Liberally construed, *see Zichko v. Idaho,* 247 F.3d 1015 (9th Cir. 2001), Movant's Motion asserts the following grounds for relief:

(1)      Ineffective assistance of appellate counsel in failing to assert the claims in Grounds 2 through 9.

(2)      The forfeiture orders by this Court were not part of the judgment as required;

(3)      Stand-by counsel denied the Movant his Fifth Amendment due process rights by losing the defense's trial exhibits;

(4)      Because Movant was in the United States as an illegal alien, the statutes under

which he was convicted do not apply to him;

(5)  Movant's sentence is unreasonable and this Court failed to provide a Statement of Reasons attached to and as part of its judgment;

(6)  Movant's rights under the Speedy Trial Act and the Interstate Agreement on Detainers were violated;

(7)  The Court lacked jurisdiction to proceed with the Movant's second trial because of his interlocutory appeal of the order denying his motion for production of grand jury ministerial minutes and records, which appeal he filed with the Ninth Circuit before the retrial;

(8)  Both indictments were defective and deficient, because the grand juries failed to find probable cause that an alleged scheme or artifice to defraud included a materially false statement (which is not negotiation of a bad check), or that financial institutions alleged as being federally insured victims were properly identified with original certificates and existed as such, or that anything occurred on federal property, and trial evidence did not match allegations made in the indictments; and

(9)  The Court did not give the jury Movant's proposed jury instructions reflecting his theory of defense, and adequate jury verdict forms.

Respondent filed its Response (#14) on March 4, 2009. Respondent asserts that Grounds 2 through 9 were procedurally defaulted by Movant's failure to raise them on direct appeal. Respondent further argues that Movant has failed to establish defective performance and prejudice sufficient to show ineffective assistance of appellate counsel, and thus Ground 1 is without merit.

Movant filed his Reply (#15) on March 25, 2009, complaining that appellate counsel had utilized contract counsel to assist in preparing the appeal, and arguing that the claims asserted in Ground 2 through 9 have merit.

//

//

### III. APPLICATION OF LAW TO FACTS

### A.  PROCEDURAL DEFAULT

### 1.  Procedurally Defaulted Claims

Respondent argues that Ground 2 through 9 are procedurally defaulted.  Ordinarily a movant under 28 U.S.C. § 2255 raising a claim for the first time in post-conviction proceedings would be in procedural default, and would be precluded from asserting the claim. *Bousley v. United States,* 523 U.S. 614, 621(1998); *United States v. Frady,* 456 U.S. 152, 165 (1982) (noting that a motion to vacate or modify a sentence under 28 U.S.C. § 2255 cannot be used as a substitute for a direct appeal).

None of Movant's grounds for relief were raised on direct appeal.

However, in a federal prosecution, claims of ineffective assistance of counsel need not be exhausted on direct appeal, but are properly brought in the first instance in a Motion pursuant to 28 U.S.C. § 2255.  "We do hold that failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). Accordingly, Movant's Ground 1 is not procedurally defaaulted.

Further, in part of Ground 2, and in Ground 7, Movant argues that the district court lacked jurisdiction because: (1) as to Ground 2, the forfeiture order was entered after the judgment; and (2) as to Ground 7, his appeals to the Ninth Circuit transferred jurisdiction to that court.  *See U.S. v. Cotton,* 535 U.S. 625, 630 (2002) ("subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived"); and *U.S. v. Ratigan*, 351 F.3d 957 (9th Cir. 2003) (distinguishing challenges to jurisdiction from challenges to proof of jurisdictional element).

Accordingly, the undersigned concludes that Ground 2 (except for the portion of the claim related to the lack of jurisdiction), 3, 4, 5, 6, 8 and 9 are procedurally defaulted.


### 2.  Cause and Prejudice

To overcome his procedural  defaults, Movant would have to show either (1) "cause"

and actual "prejudice" to explain the default, or (2) that he was "actually innocent" of the crime for which he was convicted. *Bousley,* 523 U.S. at 622.

Petitioner offers no cause to excuse his procedural default, apart from the failure of his appellate counsel to present his various claims. Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims and thus excuse a procedural default. *Ortiz v. Stewart,* 149 F.3d 923, 932, (9th Cir. 1998). However, as discussed hereinafter in connection with Ground 1, the undersigned concludes that Movant has failed to show ineffective assistance of counsel, and therefore finds that Movant has failed to establish cause to excuse his procedural default.

Movant also complains that appellate counsel failed to present his various claims, despite his specific instructions to do so. "An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy. That obligation, however, does not require counsel to obtain the defendant's consent to 'every tactical decision.'" *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (identifying exception as entry of guilty plea, waiving a jury, testifying, or whether to appeal) (citations omitted). Outside those limited "important decisions", "the lawyer has-and must have-full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). Given the lack of merits to the claims demanded by Movant, counsel acted appropriately in failing to raise such claims.

Moreover, counsel did not simply abandon the appeal, but pursued specific claims of some merit. *Cf. Anders .v State of Calif.*, 386 U.S 738, 744 (1967) (requiring counsel to file a brief seeking to withdraw and the court to permit a *pro se* brief where "counsel finds his case to be wholly frivolous"). The fact that counsel's conduct did not fall to the level of ineffectiveness means that Movant is bound by that conduct.

> So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default. Instead, we think that the existence of cause for a procedural default

> must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts . . .Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial. To the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.

*Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986).  Movant offers no such external impediment.

Although both "cause" and "prejudice" must be shown to excuse a procedural default, a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Accordingly, the undersigned concludes that Movant fails to show the necessary "cause and prejudice" to excuse his procedural default.

**3.  Actual Innocence**

Movant could avoid the effect of his procedural default through a showing of actual innocence.  A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo,* 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id.* at 329.  Moreover, a finding of "actual innocence" is not to be based upon a finding that insufficient evidence to support the charge was presented at trial, but rather upon affirmative evidence of innocence.  *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ( " '[A]ctual innocence' means factual innocence, not mere legal insufficiency.")  Further, "actual innocence must be based on reliable evidence not presented at trial." *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir.2000) (citations omitted).  Movant offers nothing to show his "actual innocence" of the charges.

//

//

**4. Summary re Procedural Default**

Based on the foregoing, the undersigned concludes that Grounds 2 (except for the portion of the claim related to the notice of appeal), 3, 4, 5, 6, 8 and 9 are procedurally defaulted and must be dismissed with prejudice.

**B. INEFFECTIVE ASSISTANCE**

**1. Standards for Effective Assistance of Appellate Counsel**

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, petitioner must show: (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88, 694. Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

A deficient performance is one in which counsel's errors were so great he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986). An objective standard applies to proving such ineffectiveness, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense." *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991)(quoting *Strickland*, 466 U.S. at 687-90). The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.

Further, it is clear that the failure to take futile action can never be deficient performance. *See Rupe v. Wood,* 93 F.3d 1434, 1445 (9th Cir.1996). "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States,* 692 F.2d 565, 572 (9th Cir. 1982).

Moreover, tactical decisions with which a defendant disagrees cannot form the basis for a claim of ineffective assistance of counsel. *Morris v. California,* 966 F.2d 448, 456 (9th Cir. 1991), cert. denied, 113 S. Ct. 96 (1992).. "Mere criticism of a tactic or strategy is not in itself sufficient to support a charge of inadequate representation." *Gustave v. United States,* 627 F.2d 901, 904 (9th Cir. 1980). Further, the reviewing court need not determine the actual reason for an attorney's actions, as long as the act falls within the range of reasonable representation. *Morris,* 966 F.2d at 456-457.

One flavor of tactical decision required of counsel is selection of which issues to pursue. "In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Miller v. Keeney,* 882 F.2d 1428, 1434 (9th Cir. 1989).

## 2. Use of Associated Counsel

Movant complains about appellate counsel's use of an associated counsel to prepare, sign, and file documents on Movant's behalf. (Memo, #7 at 1.) However, whatever limitations might exist on counsel's right to engage associated counsel in the representation without the client's consent, *see e.g.* 7A CJS Attorney & Client § 260, Movant does not allege any prejudice from such conduct but simply argues that "both gave the Petitioner constitutionally ineffective assistance of counsel." Insofar as Movant intends to rely upon the specific failures discussed hereinafter, the claim is without merit because Movant fails to establish prejudice.

## 3. Specific Failures

Movant complains that appellate counsel: (1) presented arguments which confused the first and second trial, and referenced transcripts from the former rather than the latter: (2) ignored Movant's instructions; (3) failed to consult with Movant; (4) refused to communicate with Movant; (5) failed to request oral argument; (6) failed to provide Movant with copies

- 8 -

of filed documents or the record; (7) failed to obtain Movant's trial exhibits; and (8) failed to point out the false statements of facts and law in the answering brief. (Amend. Mot., #6 at 5.) However, Movant fails to allege any specific prejudice from these deficiencies, but simply points to the fact that he lost his appeal. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Exemplary performance by appellate counsel by itself cannot be presumed to have resulted in a different outcome. Rather, for the outcome of Movant's appeal to have been different, counsel would have had to present an argument on appeal that would have established a reversible error. The only such arguments that Movant points to are his claims asserted in Grounds 2 through 9. As discussed hereinafter, Movant fails to establish that any such claims would have been successful. Accordingly, the undersigned finds a lack of prejudice from the specific failures complained of by Movant.

## 4. Ground 2: Forfeiture Order

Movant argues appellate counsel was ineffective for failing to raise the claim asserted in his Ground 2. In that ground, Movant argues that the orders of forfeiture were improperly entered after the Judgment and after a Notice of Appeal. (Amend. Mot., #6 at 6; Memo. #7 at 3-4.)

As discussed hereinafter in connection Ground 2, Movant's arguments are without merit. Accordingly, appellate counsel was not performing deficiently by failing to raise these claims, and this portion of Ground 1 is without merit.

## 5. Ground 3: Exhibits

Movant argues appellate counsel was ineffective for failing to raise the claim asserted in his Ground 3. In that ground, Movant argues that he was denied due process because standby trial counsel was given care of Movant's trial exhibits, and yet has lost them.

(Amend. Mot., #6 at 7; Memo. #7 at 4.)  Respondent answers that Movant "fails to explain, much less demonstrate, how the loss of defense trial exhibits after the conclusion of his trial prejudiced him on appeal." (Response, #14 at 7.)  Movant does not address this specific clam in his Reply.

Indeed, Movant proffers no claim which could have been raised on appeal which was not or could not be successful because of the absence of trial exhibits.[1]

Without any harm from the apparent loss of the exhibits, this claim would have been without merit.  Accordingly, appellate counsel was not performing deficiently by failing to raise this claim, and this portion of Ground 1 is without merit.

## 6.  Ground 4: Illegal Alien

Movant also argues appellate counsel was ineffective for failing to raise the claim asserted in his Ground 4.  In that ground, Movant argues that as an alien unlawfully in the United States, he could not be convicted of the various offenses.  In his Memorandum, he asserts that the criminal statutes all proscribe the conduct of a "person" or "whoever," that 1 U.S.C. § 1 limits those terms to "corporations . . . as well as individuals," and that 5 U.S.C. § 552a (a)(2) limits "individuals" to citizens or lawfully admitted aliens. (Memo. #7 at 4-5.) Apparently not recognizing the argument in Movant's Memorandum, Respondent simply argues that none of the specific statutes under which Movant was convicted required him to be lawfully in the U.S. (Response, #14 at 7-8.)  Movant's Reply relies on the oversight. (#15 at 3.)

However, Movant's argument is without merit.  The limited definition of "individual" on which he relies is not contained within the criminal statutes nor in any other generally applicable statute.  Rather, it is a definition in the "Records Maintained on Individuals"

---

[1] Movant does argue in his Reply that appellate counsel should have made greater use of the transcript.  (#15 at 2.)  However, he does not assert that such transcript was not available.  Indeed, it would not have been placed in the custody of standby counsel, but would have been available directly from the court reporter.

section of the Administrative Procedures code, and is specifically identified as applying only "[f]or purposes of this section."

Thus, this claim would have been without merit. Therefore, appellate counsel was not performing deficiently by failing to raise this claim, and this portion of Ground 1 is without merit.

## 7. Ground 5: Sentence

Movant argues appellate counsel was ineffective for failing to raise the claim asserted in his Ground 5, in which Movant argues that the upward departure was not based on facts determined by the jury, and not justified by the facts underlying his convictions. In particular, Movant complains that he had not created his own credit cards or checks, but had instead used those from closed or expired accounts, and that the amount of loss was not justified by the actual proceeds of his activities. (Amend. Mot. #6 at 9-11; Memo. #7 at 5-9.)

Respondent counters each of these arguments. (Response #14 at 7-9.) Movant simply replies that the lack of statement of reasons establishes his claim. (Reply #15 at 3.)

*Booker*; Judicially Determined Facts - Movant complains that the court improperly rejected the pre-sentence report's conclusion that an upward departure was not appropriate because Movant had not created his own credit cards or checks, but had instead used his own from closed or expired accounts. Movant complains that the district court improperly found facts when it rejected the pre-sentence report's finding that Movant's conduct did not require specialized skills or training.

In making his argument, Movant relies on *Blakely v. Washington,* 542 U.S. 296 (2004) for his argument that the court improperly found facts to support its sentencing decision. *Blakely,* a decision dealing with a state sentence, was applied to federal sentencing in *U.S. v. Booker*, 543 U.S. 220 (2005).[2] In *Booker*, the Court held that the Sixth Amendment right to trial by jury applies to sentencing under the U.S. Sentencing Guidelines, requiring that any

---

[2] *Booker* was decided on January 12, 2005, prior to Movant's sentencing.

fact (other than a prior conviction) that is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. Based on that determination, the Court excised the provision of the Sentencing Reform Act of 1984 that makes the U.S. Sentencing Guidelines mandatory. That rendered the Guidelines effectively advisory, requiring a sentencing court to consider the Guidelines sentencing ranges but permitting it to tailor a sentence in light of other statutory concerns.

As a result of *Booker's* shift of the Guidelines to advisory rather than mandatory, the applicable maximum authorized by a jury's guilty verdict is not the base sentence calculated under the Guidelines, but rather it is the statutory maximum. Thus, "[u]nder the advisory Guidelines, district courts are free to make factual determinations not made by the jury and may base their ultimate decisions regarding the length of a convicted criminal's sentence on those determinations." *U.S. v. Staten,* 466 F.3d 708, 719 (9th Cir. 2006).

Hearsay - Movant also complains that the court improperly relied upon the presentence report, which contained multi-layered hearsay. However, as noted by Respondent, district courts may rely upon hearsay in sentencing. *United States v. Charlesworth,* 217 F.3d 1155, 1160 (9th Cir. 2000) ("Federal law is clear that a judge may consider hearsay information in sentencing a defendant.").

Proof of Prior Convictions - Movant also complains that the court improperly relied upon charging documents and the pre-sentence report to determine his disputed prior convictions, rather than obtaining certified copies. Respondent correctly argues that certified records are not required to prove a prior conviction. *See United States v. Chavari-Angel,* 323 F.3d 1172, 1176 (9th Cir. 2003).[3] Moreover, Movant offers nothing to establish that he had not suffered any prior conviction relied upon. Nor, does he suggest that the outcome at

---

[3] On the other hand, "district courts may not rely exclusively on the charging documents or the pre-sentence report as evidence of a prior conviction," when the specific nature of the offense is at issue. *Chavari-Angel,* 323 F.3d at 1176. Movant makes no argument that the specific nature of his prior convictions was determinative.

sentencing would have been different had certified copies been obtained.

Actual v. Intended Loss - The heart of Movant's substantive complaint with respect to his sentence focuses on the calculation of the amount of loss. He argues that the amount relied upon was not the actual loss to the victims, but improperly included amounts recovered, and amounts relating to banks for which proof of FDIC insurance was not provided. Respondent properly counters that for purposes of sentencing, loss amounts are determined by the greater of actual or intended loss. *United States v. McCormac,* 309 F.3d 623,627-28 (9th Cir. 2002) ("[L]oss is the greater of actual or intended loss;" "Intended loss includes the 'pecuniary harm that was intended to result from the offense,' whether or not that pecuniary harm 'would have been impossible or unlikely to occur.'" (citing U.S. Sentencing Guidelines Manual § 2B1.1, cmt. n.2(A)(ii) (2001)). As discussed hereinafter in connection with Ground 8, the relevant banks (*e.g.* where the checks were deposited) were shown to be FDIC insured.

Statement of Reasons - Finally, Movant argues that the court improperly failed to include a statement of reasons in its judgment, or to state its reasons in open court. Respondent counters that "this Court is not required to attach a statement of reasons for its sentence as part of the Judgment and Commitment, but rather, must simply explain the reasons for its sentence to permit appellate review." (Response, #14 at 9 (citing *United States v. Carty,* 520 F.3d 984, 992 (9th Cir. 2008)). Indeed, the sentencing statute provides that "a transcription or other appropriate public record" is sufficient. 18 U.S.C. § 3553(c). *See U.S. v. Johnson*, 953 F.2d 1167, 1173 (9th Cir. 1992) (statement may be "an oral statement from the bench," or "a written statement"). Movant does not suggest that the reasons for his sentence were not given orally at the sentencing hearing.

Summary re Sentence - Movant has failed to identify a viable basis for arguing that his sentence was unreasonable or otherwise unauthorized. Accordingly, Movant has failed to show that appellate counsel was performing deficiently by failing to raise this claim. Therefore, this portion of Ground 1 is without merit.

//

**8.  Ground 6: Speedy Trial**

Movant argues appellate counsel was ineffective for failing to raise the claim asserted in his Ground 6.  In that ground, Movant asserts violations of the Speedy Trial Act and the Interstate Agreement on Detainers, and  complains about the following periods of delay: (a) 115 weeks between his arrest and the original indictment; (b) 8 weeks of delay thereafter before  the lodging of the detainer with the Bureau of Prisons in the Eastern District of California; (c) unspecified delay in the provision of notice of his right to demand trial; (d) delay of more than 120 days after his return to the District of Arizona before trial commenced, including  delays until issuance of the superseding indictment, and delays from the granting of a mistrial.

Respondent argues that no violation of the Speedy Trial Act , 18 U.S.C. § 3161, occurred.  (Response, # 14 at 9-11.)  Movant replies that the Speedy Trial Act applies to an arrest in a separate criminal case, and that the motion to continue the second trial was made by standby counsel, and not Movant.  (Reply, #15 at 4.)

Pre-Indictment Delay - Movant complains that the Government knew of his criminal conduct at the time of his arrest in another matter, and yet delayed 115 weeks before finally successfully obtaining an indictment in this case.  The parties disagree (each without citing authority) on whether the Speedy Trial Act applies to an arrest in a separate criminal case.

The Act provides: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons *in connection with such charges*."  18 U.S.C. § 3161(b) (emphasis added).

> [F]or the provisions of the [Speedy Trial] Act to apply, the arrest must also have been "in connection with" the charges contained within the later indictment.  "'The time limitation for indicting an accused does not begin to run if the accused is arrested for an unrelated offense.'"

*U.S. v. Cepeda-Luna,* 989 F.2d 353, 356 (9th Cir. 1993) (citations omitted).  Movant offers nothing to suggest that his arrest or detention in California was "in connection with" the charges in this case.

Similarly, the Interstate Agreement on Detainers, 18 U.S.C.A. App. 2 §2 ("IAD") only relates to "detainers based on untried indictments, informations, or complaints." IAD, Art. I. Accordingly, it did not apply until after the filing of the indictment (or as discussed hereinafter), until filing of a detainer with Movant's custodian in California.

Delays in Lodging Detainer and Transporting - Movant also complains that after his April, 2003 indictment the Government delayed almost 8 weeks before lodging a detainer against him, and another three months to present him in Arizona. Respondent counters that similar delays have been held to not violate the Speedy Trial Act, and that in any event Movant had filed his first motion in the instant prosecution just two months after his indictment. (Response, #14 at 10.) Movant properly replies that his filing of a motion from a California prison is irrelevant. (Reply, #15 at 3-4.)

Subsection (c) of the Speedy Trial Act provides: "the trial of a defendant . . . shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). Because Movant was outside the district at the time of his indictment, the later date would be his "appear[ance] before a judicial officer of the court in which such charge is pending." According to the Court's docket, that first appearance occurred on July 2, 2003. (CR#13, M.E. 7/2/03 ("first appearance of Leslie Charles Cohen in this district").)

Moreover, the Speedy Trial Act specifically excludes "delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district" and "delay resulting from transportation of any defendant from another district." 18 U.S.C. § 3161(h)(1)(E) and (F).

It is true that subsection (j) of the Act places upon counsel for the government an obligation to "promptly. . . undertake to obtain the presence of [a defendant already serving a term of imprisonment]. . . and to cause a detainer to be filed" and requires notice of the detainer and right to demand trial be "promptly" given to the defendant. 18 U.S.C. § 3161(j). However, the Speedy Trial Act's sanctions, e.g. dismissal of the indictment, do not apply to

- 15 -

violations of subsection (j). *U.S. v. Valentine,* 783 F.2d 1413, 1415 (9th Cir. 1986). *See* 18 U.S.C. § 3162(a) (dismissal only provided for violations of 18 U.S.C. § 3161(b) (charging delay) and (c) (trial delay).) Rather, the remedies for such violations lie outside the criminal proceeding, and consist of the sanctions against the prosecuting attorney spelled out in 18 U.S.C. § 3161(b), *e.g.* $250 fine, suspension, disciplinary reports. Thus the STA does not provide a habeas remedy for a delay in Movant's transport to Arizona.

Nor does the Interstate Agreement on Detainers provide solace for Movant. "[T[he IAD does not require detainers to be filed." *Fex v. Michigan,* 507 U.S. 43, 51 n. 4 (1993). Rather, it simply provides the process for dealing with such a detainer when lodged. Thus, it has no effect until a detainer is lodged. *See U. S. v. Mauro,* 436 U.S. 340, 361 (1978) (because detainer never lodged, IAD did not apply); and *U.S. v. Reed*, 620 F.2d 709, 711 (9th Cir. 1980) (IAD did not apply because "the federal government never lodged a detainer").

Movant also complains that the detainer was served by the U.S. Marshals Service for the Central District of California, while he was detained in the Eastern District of California. Movant does not explain the basis for his particularity. Perhaps Movant intends to rely upon the references in 18 U.S.C. § 3161(j) to the "the person having custody of the prisoner." Moreover, that reference relates to the person being served with the detainer and acting on it, not the entity serving the detainer. Movant offers nothing to show that a branch of the U.S. Marshals Service was the "person having custody" of Movant at that time. Rather, the record reflects that he was in the custody of the bureau of prisons.

Indeed, the IAD does not specify the person who is to serve the detainer. Indeed, it does not require formal service at all, but simply addresses itself to detainers which have in fact been "lodged."

> A detainer is simply a notice to prison authorities that charges are pending against an inmate elsewhere, requesting the custodian to notify the sender before releasing the inmate. The detainer itself does nothing to affect the prosecution of an inmate. Filing a detainer is an informal process which does not bind the authorities to act. Generally, a penal institution will recognize a detainer lodged by any person who has authority to take an inmate into custody. In most instances, the prosecutor charged with the task of bringing the case to disposition files the detainer, but, if the case has not yet reached the stage of a formal

indictment or information, the detainer may be filed by the police.
*Ridgeway v. U.S.,* 558 F.2d 357, 360 -361 (6th Cir. 1977).  *See People v. Beamon,* 83 Mich.App. 121, 132, 268 N.W.2d 310, 316 (1978) (letter sent by clerk of court constituted a detainer); *State v. Wells,* 94 Ohio App.3d 48, 54, 640 N.E.2d 217, 221 (1994) (fax from police department to prison constituted detainer).

Delay in Notice of Rights - Movant also complains of unspecified delay in the provision of notice of his right to demand trial.  The IAD requires:

> The warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

18 U.S.C.A. App. 2 §2 , Art. III(c).  Thus, the custodian in California was obligated to "promptly" advise Movant of the detainer once it was received.  Movant does not specify when he was informed, nor offer anything else to show that notice was not given "promptly." However, Movant specifies that the detainer was lodged on May 27, 2003, and by July 2, 2003, Movant had been returned to Arizona.  (Amend. Mot. #6 at 12.)  Thus, any delay in notice was apparently for a period less than 36 days.  Movant proffers no prejudice from this delay, and little seems likely given his prompt transfer to Arizona after the detainer.  *See State v. Herring,* 210 Conn. 78, 89, 554 A.2d 686, 692 (1989) (no relief under IAD where delay in providing form of 2 months, with 4 month delay in forwarding IAD request to prosecuting state, where no allegation of bad faith in delays); and *Shumate v. State,* 449 So.2d 387, 387 (Fla.App. 1984) (IAD "does not require that charges pending in Florida against a prisoner in a foreign state be dismissed for failure of the foreign prison officials to promptly notify the prisoner as to a Florida detainer").

Delay Prior to First Trial- Next, Movant complains of a delay of more than 120 days after his return to the District of Arizona before trial commenced, including delays resulting from the issuance of the superseding indictment, and from the granting of a mistrial.

With regard to the delay prior to the commencement of the first trial, Because Movant first appeared in Arizona on July 2, 2003, his original speedy trial deadline was seventy days

1    later, on September 10, 2003.  The trial was originally set for September 2, 2003, but was

2    effectively vacated on August 22, 2003, and reset on September 9, 2003 for October 29,

3    2003.  (M.E. 8/22/03, CR#29; M.E. 9/9/03, CR#33.)   In ordering that new trial date, the

4    Court did not identify the delay as excludable.  On October 28, 2003, Movant moved for a

5    two month continuance (CR#73), which was granted and the time excluded until the new trial

6    date of January 6, 2004.  (M.E. 10/28/03, CR#74.)  On December 17, 2003, the Court reset

7    the trial until February 4, 2004, but did not exclude any time. (M.E. 12/17/03, CR#106.)  On

8    December 29, 2003, the Court reset the trial to the earlier date of January 29, 2004.  (Order

9    CR#110.)  Movant's first trial eventually commenced on January 29, 2004.

10          Respondent argues that after accounting for excludable delay, the trial was timely.

11          Respondent, without reply from Movant, points to the pendency of Movant's motion

12   to dismiss (CR#5), filed June 6, 2003 and denied on October 28, 2003 (CR#66), as well as

13   33 pretrial motions and interlocutory appeals.  Indeed, 18 U.S.C. § 3161(h)(1)(D), (formerly

14   subsection (h)(1)(F)),   provides for the exclusion of "delay resulting from any pretrial

15   motion, from the filing of the motion through the conclusion of the hearing on, or other

16   prompt disposition of, such motion."   And subsection (h)(1)(C) provides for exclusion of

17   "delay resulting from any interlocutory appeal."   Moreover, as noted by Respondent, delay

18   for the reasons enumerated in subsection (h)(1) is automatically excluded, even if the Court

19   does not make contemporaneous findings as to the application of the exclusions, nor need

20   it be shown that the motion resulted in the delay.

21                 Pretrial motion delay under section 3161(h)(1)(F) [now (D)] is
                   automatically excluded. The district court does not have to make
22                 findings or consider any factors. The delay due to a pretrial motion does
                   not even have to be "reasonably necessary" to be excluded.

23   *U.S. v. Aviles-Alvarez,* 868 F.2d 1108, 1112 (9th Cir. 1989) (quoting *Henderson v. United*

24   *States*, 476 U.S. 321, 330 (1986).

25          However, not all time between filing and disposition is excludable.  As discussed in

26   *Henderson*, the length of the exclusion for pretrial motions is determined by whether the

27   motion is decided on the briefs or after hearing.  If no hearing is held then upon completion

28

of briefing, only time necessary for a "prompt" disposition is excluded. *Henderson*, 476 U.S at 329.

Here, there apparently was no hearing on Movant's motion to dismiss, but it was not briefed and ready for consideration until October 21, 2003, when Movant filed his Reply (#63). The Court then promptly ruled seven days later on October 28, 2003.[4]  Accordingly, any delay was excluded at least through October 28, 2003. From that point, the speedy trial deadline would have expired on January 7, 2004.

However, on the same date as the order on the motion to dismiss, Movant filed a motion to continue trial[5] (CR#73), which was granted over the government's objection (CR#74, M.E. 10/28/03). That order set January 6, 2004 as the new trial date, and excluded the resulting delay. Such delay is excludable under 18 U.S.C. § 3161(h)(8)(A). Accordingly, the excluded time continued through January 6, 2004, and the new speedy trial deadline expired seventy days later, on March 17, 2004. Thus, his trial on January 29, 2004 was within the Speedy Trial Act deadlines.

<u>Delay from Mistrial</u> - Finally, Movant complains of the delay after the granting of a mistrial. On February 3, 2004, the Court granted Movant's motion for mistrial, and trial was reset for March 9, 2004. (CR#157, M.E. 2/3/04.) Following the grant of a mistrial, a new seventy day period begins. 18 U.S.C. § 3161(e); 9A Fed.Proc., L.Ed. § 22:1302. Accordingly, as recognized by the Court at the time, the new Speedy Trial deadline was April 14, 2004 (seventy days after the February 3, 2004 mistrial). (CR#157, M.E. 2/3/04.) Movant's second trial began on March 25, 2004, well within the new time limits. (CR#242,

---

[4]  Because it is not necessary to resolution of the issue, the undersigned does not attempt to resolve what excludable delay would have resulted from the numerous other pretrial motions and interlocutory appeals.

[5]  Although delay from this motion to continue the first trial clearly resulted in excludable delay, Movant complains in his reply that the motion to continue the second trial (CR#173) was made by stand-by counsel. (Reply, #15 at 4.) Presumably, Movant believes that he should not be assigned responsibility for any resulting delay. Because the second trial was timely even without excluding any delay resulting from counsel's motion, the undersigned finds it unnecessary to resolve the Speedy Trial effect of that motion.

M.E. 3/25/04.)

Summary - Movant has failed to identify any violation of the Speedy Trial Act or the Interstate Agreement on Detainers. Accordingly, the undersigned concludes that the claims asserted in Ground 6 would have been without merit. Therefore, appellate counsel was not performing deficiently by failing to raise these claims, and this portion of Ground 1 is without merit.

### 9. Ground 7: Interlocutory Appeal

Movant argues appellate counsel was ineffective for failing to raise the claim asserted in his Ground 7. As discussed hereinafter, Ground 7 is without merit. Therefore, appellate counsel was not performing deficiently by failing to raise this claim, and this portion of Ground 1 is without merit.

### 10. Ground 8: Indictments

Movant argues appellate counsel was ineffective for failing to raise the claim asserted in his Ground 8. In that ground, Movant argues that the indictments were defective because they: (1) failed to allege the acts in Counts 1 to 9 with sufficient particularity; (2) failed to allege a materially false statement (other than negotiation of a bad check); (3) failed to allege the victim banks were FDIC insured; (4) was duplicitous because it combined the offenses of "Bank Fraud or Aid and Abet Bank Fraud"; and (5) differed from the evidence presented at trial. (Amend. Mot, #6 at 14.)[6] Respondent refers to its response to the motions for

_____

[6] Movant refers to a host of other factual and legal issues in his Memorandum in support of this claim, *e.g.* admissibility and sufficiency of evidence of FDIC insurance, adequacy of verdict forms, etc. (*See* Memo, #7 at 16-23.) The substance of his Motion, however, asserts only the claims discussed herein. (*See* Amend. Motion, #6 at 14.) Mindful of the obligation to liberally construe *pro se* pleadings, the undersigned nonetheless concludes that Movant does not assert these additional matters as separate claims, but as part of the *res gestae* offered in explaining the claims actually raised in the grounds for relief asserted in his Motion. The actual grounds for relief asserted by Movant are clearly limited in his Motion to the issues addressed herein, and his arguments in his Memorandum are organized around these specific claims.

acquittal and new trial as a basis for rejecting this claim.   (Response, #14 at 13.)
Unfortunately, that response fails to address all the specific claims raised herein.

Movant does not address this claim in his Reply.

> To be sufficient, an indictment must state the elements of the offense charged with sufficient clarity to apprise a defendant of the charge against him, primarily so that he can defend himself against the charge and plead double jeopardy in appropriate cases. To ascertain whether an indictment adequately performs this function, we have held that an indictment must "be read in its entirety" and "construed according to common sense." The key question in these inquiries is whether an error or omission in an indictment worked to the prejudice of the accused. If it did not, a conviction will not be reversed merely because a minor or technical deficiency in the indictment is later discovered.

*U.S. v. Normandeau,* 800 F.2d 953, 958 (9th Cir. 1986), overruled in part on other grounds by *United States v. Nordby*, 225 F.3d 1053, (9th Cir.2000).

**Prejudice**   - As noted in *Normandeau*, to be entitled to relief as a result of deficiencies in the indictment, appellate counsel would have been required to show that the "error 'affect[ed] substantial rights.' This usually means that the error 'must have affected the outcome of the district court proceedings.' "  *U.S. v. Cotton,* 535 U.S. 625, 631-632 (2002).

Here, Movant fails to show any prejudice from the complained of defects.  To be sure, Movant complains that his conviction was wrongful.  But his link to the purported defects in the indictment flow not from the indictment, but rather from  Movant's complaint that the jury instructions and verdict forms were deficient and the proofs at trial insufficient.  Doubtless, practitioners may look to an indictment when crafting jury instructions or forms of verdict, or in resolving what will be presented at trial, but to say that defects in the latter are caused by defects in the former stretches the indictment beyond its intended purpose.  The indictment requirement is not intended to insure proper instructions, verdict forms and proofs.  Rather, an indictment is sufficient if it "fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *U.S. v. Resendiz-Ponce,* 549 U.S. 102, 108 (2007).

For this reason alone, this claim is without merit.

**Sufficient Particularity** - Movant complains that Counts 1 to 9 "lacked 'factual particularity'." Standing on its own, the portion of the Superseding Indictment setting out Counts 1 to 9 simply alleged the passing of a series of checks. (#39 at ¶ 11.) However, that section also incorporates by reference the general allegations of the indictment:

> 10. The allegations of paragraphs 1-9 of this indictment are repeated and realleged as though set forth fully herein.

(#39 at 3.) Those preceding paragraphs spelled out Movant's scheme of falsifying his identity (*id.* at ¶¶ 1, 4 & 8), operating various bank accounts under false names (*id.*at 1,4), and utilizing checks in the names of third parties (*id.* at ¶ 6, 9). Moreover, paragraph 11 in Count One made specific reference to "the scheme or artifice set forth above." "[A]n indictment must 'be read in its entirety' and 'construed according to common sense.' " *Normandeau*, 800 F.2d at 958. Thus Count one was not limited to alleging the deposit of bad checks, but included the scheme of using false identities, etc.

Further, Movant shows no prejudice from the lack of additional factual allegations. Accordingly, this claim would have been without merit.

**Materially False Statement** - Movant complains that Counts 1 to 9 of the indictment failed to allege that he knowingly made a materially false statement other than the negotiation of a bad check.

Allegation of Materially False Statements - Count One was based on violation of 18 U.S.C. § 1344. "Under 18 U.S.C. § 1344(1), the government must prove that: (1) the defendant knowingly executed or attempted to execute a scheme or artifice to defraud a financial institution; (2) the defendant had the intent to defraud a financial institution; and (3) the bank involved was federally insured." *U.S. v. Flanders,* 491 F.3d 1197, 1212 (10th Cir. 2007). Those allegations are made in the Superseding Indictment. (*See* #39 at ¶¶ 11, 7, 2 & 3.)

However, the Supreme Court has held that a material falsehood must be shown to establish the requisite fraud. *Neder v. United States*, 527 U.S. 1, 22 (1999). "Thus, pursuant

to *Neder*, materiality of the scheme is an essential element of bank fraud in violation of 18 U.S.C. § 1344(1). As such, materiality must be alleged in the indictment." *U.S. v. Omer,* 395 F.3d 1087, 1089 (9th Cir. 2005).

Here, the Superseding Indictment did not conjure up the words "material falsehood", or any other variation to assert materiality of Movant's fraudulent activities. But, it did amply identify the specific falsehoods which were utilized to conduct the fraud. Movant makes no showing that these specific allegations were insufficient to advise him of the nature of the charges against him, or that the failure of the indictment to denominate his misrepresentations as "material falsehoods" altered the outcome of the proceeding. Without such, any challenge by appellate counsel would have been futile. *Cotton*, *supra*.

"Bad Checks" - As to the allegations of bad checks, the U.S. Supreme Court has held that mere issuance of an insufficient funds check does not qualify as a "false statement" within the meaning of 18 U.S.C. § 1014. *Williams v. U.S.*, 458 U.S. 279 (1982). However, Counts 1 to 9 were not based upon a violation of 18 U.S.C. § 1014 (false statements), but the violation of 18 U.S.C. § 1344. Only Count 10 was based upon § 1014.

Moreover, the reasoning on *Williams* was not based upon some general exclusion of false statements relating to checks, but upon the recognition that by its very nature a check does not represent anything about the balance of the drawn upon account.

"There is a fundamental difference, however, between checks drawn on an account containing insufficient funds, on the one hand, and affirmative misrepresentations made on the check itself, on the other." *Elliott v. U.S.,* 332 F.3d 753, 762 (4th Cir. 2003) (distinguishing *Williams* and finding forged checks violated § 1014). *See also U.S. v. Hord*, 6 F.3d 276 (5th Cir. 1993) (distinguishing *Williams* and finding counterfeit checks violated § 1014); and *United States v. Worthington*, 822 F.2d 315, 316 (2d Cir.1987) (distinguishing *Williams* and finding that printing name of nonexistent drawee bank on check violated §1014). Thus, "an affirmative misrepresentation set forth on a check, as opposed to a check drawn on an account containing insufficient funds, constitutes a 'false statement' under § 1014." *Elliott*, 332 F.3d at 762. Thus, *Williams* did not hold that the involvement of an

insufficient funds check acts as a shield, permitting the passer to make with impunity all manner of false statements in connection with the transaction.

Here, the Superseding Indictment did not merely allege the passing of insufficient funds checks. Rather, it alleged that Movant "would use falsely assumed names and means of identification of other individuals, such as names, Social Security account number, dates of birth and addresses in an effort to conceal his true identity." (CR#39 at 3.) Specifically in Count 10, the indictment alleged that Movant "knowingly made a false material statement" when he misrepresented his identity. (*Id.* at 4.)

Accordingly, any claim based upon the failure to allege a false statement would have been without merit.

**FDIC Insurance** - Movant also complains that the indictment failed to allege that the victim banks were FDIC insured. At trial, the court rejected this argument in Movant's motions for judgment of acquittal that inadequate or improper proof of such insurance was given. (Order 8/9/04, CR#342 at #4-5.) Now, however, Movant argues that whatever the proof, the FDIC insurance was not alleged. To the contrary, the Superseding Indictment specifically alleged that the victim banks were FDIC insured:

> 2. Wells Fargo Bank, Arizona, (hereinafter "Wells fargo") was at all time material a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.
> 3. Bank One, Arizona, (hereinafter "Bank One") was at all time material a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

(Sup. Indict. #39 at 2.)

In his Memorandum, Movant attempts to resurrect his arguments that the indictment was required to allege that any bank involved in his entire scheme was required to be FDIC insured. In particular, Movant complains of a lack of evidence of insurance for Wells Fargo Bank, California and Wells Fargo Bank, Nevada where the accounts to which he deposited the checks in Counts 3 through 7 were located. (#7 at 19.) Similarly, he complains that there was no evidence that the banks on which the bogus checks were drawn, *i.e.* Bank of America, the Bank of Montreal, Canadian Imperial Bank of Commerce, and Toronto-Dominion Bank,

- 24 -

were federally insured. (Memo, #7 at 20.)

However, the statutes make no requirement that every bank in the chain be insured. Rather, the requirement is that the defrauded bank be a "financial institution," 18 U.S.C. § 1344 (and thus insured as provided in 18 U.S.C. § 20), or that the bank who is being "influence[d]" be an "institution the accounts of which are insured by the Federal Deposit Insurance Corporation," 18 U.S.C. § 1014. Here, when Movant passed the bogus checks at Wells Fargo Bank, Arizona, he was defrauding and influencing that bank, irregardless of the fact that he was ultimately attempting to cause a credit in the California and Nevada banks, or to draw on accounts in other banks. Under Movant's theory, a defrauder could escape punishment by simply including a fictitious, foreign or other uninsured bank somewhere in his schemes. To the contrary, allegations of FDIC insurance of the Arizona banks, where Movant passed the checks and executed his scheme, was sufficient.

Thus, any claim based upon a failure to allege FDIC insurance would have been without merit.

**Variance from Proof** - Movant argues that the proof offered at trial varied from the allegations of the Superseding Indictment. In particular, Movant complains that: (a) Counts 3 to 7 of the Superseding Indictment referenced accounts maintained by Wells Fargo Bank Arizona, while the testimony at trial reflected the referenced accounts were actually maintained by Wells Fargo Bank California or Wells Fargo Bank Nevada; (b) Counts 15 and 17 of the Superseding Indictment referenced Movant's use of Arizona identification number D00173934, while the jury verdict form referred to number 01173934 (which was the number actually issued to an A.L. Cohen; (c) Counts 11, 13, 16 and 18 identifying various social security numbers as having been issued in 1980, while evidence showed they were either issued in 1964 or not at all; (d) Counts 10 and 12 alleged the provision of false information about a Michigan drivers license, while evidence showed Movant was the lawful holder of the license; and (e) Counts 14 and 19 alleged that various accounts were open for a year and a day, while evidence showed the accounts were all open for only a matter of months. (Memo, #7 at 19-23.)

> "A variance in proof occurs when the charging terms of the indictment are left unchallenged, but the evidence offered at trial proves facts materially different from those alleged in the indictment." . . . "A variance requires reversal only when the defendant was prejudiced thereby."

*U.S. v. McCormick*, 72 F.3d 1404, 1408 (9th Cir. 1995) (citations omitted).

a. Location of Banks - Movant asserts that the accounts referenced in Counts 3 through 6 and 7 did not exist anywhere. Those Counts concern the deposit of various checks drawn in the name of "WT Johns" on an account at the Bank of Montreal, and deposited to an account in the name "California CMRC Corporation," account #602843517 (Counts 3 to 6), or drawn in the name of "R. Chung" and deposited in an account in the name "G.L. Cohen", account #0849-31982 (Count 7). Movant argues that instead the evidence showed that the accounts of California CMRC were located at Wells Fargo Bank, California under account number "6028-435170," and the G.L. Cohen account was maintained at Wells Fargo Bank Nevada under account number "0849-319082." (Memo, #7 at 19.)

Movant raised at trial the dispute about the location of the banks maintaining the various accounts. Respondent argued that the locations of the accounts was not a material variance, inasmuch as the indictment at heart alleged a scheme to defraud Wells Fargo Bank Arizona, where the various bogus deposits were made. (Response CR#293 at 4.) Movant offers nothing to counter this argument.

Moreover, Movant does not suggest how the variance in the location of the account and the account numbers prejudiced his ability to defend on the facts which mattered, *i.e.* his presentation of the bogus checks at Wells Fargo.

b. Arizona License Number - The Superseding Indictment asserted in Counts 15 and 17 that Movant made a false statement when he "represented he was the lawful holder of Arizona Identification Card D00173934, issued to Alan L. Cohen." (CR#39 at 6-7, ¶ 23, and 7-8, ¶ 27.) Movant complains that the evidence and verdict forms referred instead to a license issued to A.L. Cohen, number 01173934. (Memo, #7 at 20.)

Movant raised at trial the dispute about the differences in the specific Arizona drivers license number. Respondent argued that the difference was a matter of a typographical error,

and not a material variance. (Response CR#293 at 7.) The Court rejected the claim, finding no constructive amendment, and a lack of prejudice. (Order 8/9/04, CR#312 at 5-6.) Again, Movant offers nothing to counter Respondent's argument or to show that the trial court's decision was in error. Movant does not argue, for example, that he really was the valid possessor of one of the identification cards, or that he did not present a false identification.

c. Issuance of Social Security Numbers - The Superseding Indictment alleged that Movant's real social security number was issued "on or about December 29, 1980 . . . by the Social Security Administration." (CR#39 at 1, ¶ 1.) Movant complains that the evidence at trial showed that it was issued in 1964 by the Secretary of Health Education and Welfare.[7] (Memo #7 at 21.) Movant offers no suggestion why the date of issuance or specific issuing authority was pertinent at trial. Movant does not deny that he was issued the number, nor for example, does he assert that somehow the discrepancy would justify his use of numbers assigned to third parties.

d. Michigan Drivers License - The Superseding Indictment alleged that Movant had presented the banks "Michigan Operators License C 500 487 115 249 issued to L. Charles Cohen . . . with a date of birth of March 29, 1947." (CR#39 at 4, ¶ 13, 5, ¶ 17.) In contrast, the indictment alleged Movant's name as "Leslie Charles Cohen", and his date of birth as "March 29, 1941." (Id. at 1, ¶ 1.) Movant complains that the evidence showed he was the holder of the license. However, the indictment did not assert that Movant had not been issued the license. As noted by Respondent in opposing Movant's Motion for Acquittal, the misrepresentation was in the dates of birth on the Michigan license, e.g. 1947 instead of 1941. (CR#293 at 6.) Movant has shown no variance in this regard.

e. Duration Accounts Open - The Superseding Indictment alleged in Counts 14 and 19 that Movant's use of another's identification resulted in Movant obtaining "items of value

_____

[7] At trial Movant raised a similar argument about the sufficiency of the evidenced of issuance of the various social security numbers by the Commissioner of Social Security. Respondent argued and the Court agreed that there was sufficient evidence of the issuance of the numbers. (Response CR#293 at 6; Order 8/9/04, CR#312 at 5.)

aggregating $1,000 or more during a one year period from July 10, 2000 to July 10, 2001," (CR#39 at 6, ¶ 21) or "during a one year period from December 1, 2000 to December 1, 2001" (*id.* at 8, ¶ 31). Movant complains that the evidence at trial showed the affected accounts were only open for two to five months each. (Memo #7 at 21.) Movant simply fails to understand the statute and thus the allegation of the indictment.

Counts 14 and 19 allege violations of 18 U.S.C. § 1028(a)(7), (b)(1)(D), and (f). Subsection 1028(b) establishes the ranges of punishment for the fraudulent use of an identity. Paragraph (b)(1) specifies when the enhanced sentencing range of up to 15 years applies. Subparagraph (b)(1)(D) makes that enhanced sentencing applicable to a violation of § 1028(a)(7) when an "individual committing the offense obtains anything of value aggregating $1,000 or more during any 1-year period." The statute thus does not mandate the offense to have continued for a year, but sets the minimum value received as a result of the fraud. The statute requires that all of the minimum amount be obtained within a "1-year period" rather than obtained over a longer period. Thus, if the entire minimum is obtained on a single day, the statute is satisfied.

Thus, the allegations of one year in Counts 14 and 19 do not suggest that the fraud continued for an entire year, but simply allege that the requisite value was obtained within a year. Thus, evidence that the value was obtained in a shorter period was within the allegation of the indictment, and no variance occurred.

**Duplicitous Counts** - Movant complains that the indictment was duplicitous because the Counts alleged multiple separate offenses, *i.e.* executed, attempted to execute, etc. In Counts 1-9, the indictment alleged that Movant "executed and attempted to execute" his fraudulent scheme "by depositing and causing to be deposited" the bogus checks. (CR#39 at 3, ¶ 11.) In Counts 14 and 19, the indictment alleged that Movant "did knowingly use and attempt to use" another's identification. (*Id.* at 6, ¶ 21; 8, ¶ 31.)

Movant misapprehends the nature of a duplicity claim. "An indictment is duplicitous where a single count joins two or more distinct and separate offenses." *U.S. v. Garcia,* 400 F.3d 816, 819 (9th Cir. 2005). However, an indictment is not duplicitous merely because a

count identifies several ways in which the one offense may be committed. "When a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any of those acts conjunctively charged may establish guilt." *U.S. v. Urrutia,* 897 F.2d 430, 432 (9th Cir. 1990). Federal Rule of Criminal Procedure 7(c) specifically provides that "[i]t may be alleged in a single count that ... the defendant committed [the offense] by one or more specified means." Indeed, the Supreme Court has noted that "[a] single offense should normally be charged in one count rather than several, even if different means of committing the offense are alleged." *Sanabria v. U. S.,* 437 U.S. 54, 66 n. 20 (1978). Thus, for example, the fact that the government charges violation of a statute by both principal liability and liability for aiding and abetting does not render an indictment duplicitous. *See United States v. Dean,* 969 F.2d 187, 195 (6th Cir.1992). Nor does the joining of a charge of violating and causing a violation. *Id.*

Here, § 1344 makes it a single crime when one "executes, or attempts to execute" a fraudulent scheme. Similarly § 1028(f) makes it a single crime whether one actually commits an offense under §1028 or simply "attempts . . . to commit any offense under this section."

Thus, the indictment did not set out separate offenses in the same count, but single offenses with the different means of commission specified.

**Summary** - In his Ground 8, Movant sets forth a series of complaints about the indictment. As discussed above, Movant has not shown that any of them have merit. Accordingly, appellate counsel was not performing deficiently by failing to raise this claim, and this portion of Ground 1 is without merit.


**11. Ground 9: Jury Instructions**

Finally, Movant argues appellate counsel was ineffective for failing to raise the claim asserted in his Ground 9. In that ground, Movant argues that the Court failed to give Movant's proposed jury instructions addressing Movant's theory of defense, and failed to provide adequate verdict forms. Respondent argues that these claims should again be

rejected on the same basis that the Court disposed of them in connection with Movant's judgments for acquittal.  (Response, #14 at 13.)  Movant does not address this issue in his Reply.

Certainly, Movant was entitled to have the jury instructed on his theory of defense in the case.  *See, e.g., Mathews v. United States*, 485 U.S. 58, 63 (1988) (stating that defendant is "entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor").  However, "[a] defendant is not entitled to any particular form of instruction."  *United States v. Lopez-Alvarez*, 970 F.2d 583, 597 (9th Cir.1992).  "A failure to give such instruction is reversible error; but it is not reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory."  *United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir.1990).

Movant argues that his theories of defense at trial were: (a) the lack of evidence on the "knowingly" and "materiality" elements in Counts 1 through 9; (b) the lack of proof matching the bank names and account numbers alleged in Count 1 through 9; and (c) the variance in proof on the identification number alleged in Counts 15 and 17.  (Memo #7 at 24.)  These are not unique theories of defense, but simply arguments that proof of the elements of the offenses was either absent or conflicting.  Movant does not suggest why special instructions, beyond those setting out the elements of the offenses and burden of proof, was necessary to afford Movant his right to jury instructions on his theory of defense.

> A proper theory of defense instruction is one which sets forth a set of facts which would preclude a finding of guilt.  Such an instruction is neither a marshaling instruction which sets forth the elements of the crime and requires the State to prove those elements, nor an instruction which defines one of the elements set forth in the marshaling instruction

*Conner v. State,* 362 N.W.2d 449, 453 (Iowa,1985).  Thus, no separate special instructions were required to address Movant's theories.

Therefore, the undersigned must conclude that this claim would have been without merit.  Accordingly, appellate counsel was not performing deficiently by failing to raise this

claim, and this portion of Ground 1 is without merit.

## 12. Summary re Ineffective Assistance

Movant raises a series of claims about deficient conduct by appellate counsel. However, Movant fails to establish a viable claim for appellate review that counsel failed to raise. Therefore, Movant has failed to show both deficient performance and prejudice. Accordingly, Movant fails to establish that he was denied effective of assistance of counsel, and his Ground 1 is without merit and must be denied.

## C. GROUND 2: JURISDICTION TO ENTER FORFEITURE ORDER

The Court issued its Judgment and Order of Commitment on February 22, 2005, and it was filed March 1, 2005 (CR#399). Subsequently, on March 1, 2005, the Court filed its Preliminary Order of Forfeiture (CR#400). On the same date, Movant filed his Notice of Appeal (CR#402). The Final Order of Forfeiture was filed March 15, 2005 (CR#408).

Movant argues that failure to include an order for forfeiture in the original Judgment deprived the Court of the authority to enter the subsequent orders. And, Movant argues that his intervening Notice of Appeal deprived the district court of jurisdiction to enter the final order of forfeiture..

Respondent argues that Movant fails to establish prejudice, because any deficiency was a technical error which could have easily been cured had appellate counsel raised the issue.

## 1. Failure to Enter Preliminary Forfeiture Order at Sentencing

Federal Rule of Criminal Procedure Rule 32.2(b)(3) requires that the "order of forfeiture . . . must be made a part of the sentence and be included in the judgment." The comments to the 2002 amendments to the Rule clarify that the process provided establishes that the forfeiture order is "final as to the defendant at the time of sentencing" even though the order is preliminary to permit an opportunity for third party claimants to assert an interest

- 31 -

in the property before a final order of forfeiture is entered.

Where a court fails to include the preliminary forfeiture order in the judgment, or to discuss it at sentencing and then enter a contemporaneous forfeiture order, the court lacks jurisdiction to subsequently enter the order. *U.S. v. Petrie,* 302 F.3d 1280, 1285 (11th Cir. 2002). Here, however, the forfeiture was not only discussed at sentencing, but the Government's Motion for Preliminary Order of Forfeiture (CR#364) was granted at the time of sentencing, with the notation that the order was to follow. (M.E. 2/22/05, CR#398.) In *U.S. v. Yeje-Cabrera*, the First Circuit rejected a challenge to a forfeiture order where the "district court included the forfeiture at the time it orally sentenced," but failed to include it in the written Judgement and later entered the order of forfeiture. 430 F.3d 1, 16 (1st Cir. 2005). *See* (citing *Yeje-Cabrera* approvingly). In *U.S. v. Loe*, the Fifth Circuit approved of the district court entering "a *nunc pro tunc* amendment" pursuant to Fed. R. Crim. Proc. 36 to include a forfeiture discussed at sentencing but not included in the final judgment. 248 F.3d 449, 464 (5th Cir. 2001).

Movant agues in his Reply (#15 at 3) that no amended judgment has been entered. However, as recognized by the *Loe* court, "in the event of a conflict between an oral judgment and a written order, the oral ruling prevails." 248 F.3d at 464. Thus, while not prohibited, no amended judgment is necessary, and the oral granting of the preliminary forfeiture at sentencing was sufficient to effect the forfeiture.

**2. Entry of Final Order after Notice of Appeal**

The final order of forfeiture (CR#408) was entered after Movant filed his Notice of Appeal (CR#402). Movant argues that the appeal deprived the Court of jurisdiction to enter this order. To the contrary, it is the preliminary order of forfeiture which the defendant is required to appeal, and it is that order which is affected by such appeal.

> In 1984, Congress addressed [the need to adjudicate third party interests] when it enacted a statutory scheme whereby third party interests in criminally forfeited property are litigated by the court in an ancillary proceeding following the conclusion of the criminal case and the entry of a preliminary order of forfeiture. . . .Because the order of

forfeiture becomes final as to the defendant at the time of sentencing, his right to appeal from that order begins to run at that time. As courts have held, because the ancillary hearing has no bearing on the defendant's right to the property, the defendant has no right to appeal when a final order is, or is not, amended to recognize third party rights.

Fed. R. Crim. Proc. 32.2(b), Comments to 2002 Amendments.

Accordingly, the claim that the district court was without jurisdiction to enter the final order of forfeiture is without merit

## D.  GROUND 7: JURISDICTION DURING INTERLOCUTORY APPEAL

In his Ground 7, Movant argues that the District Court lacked jurisdiction to proceed as a result of his March 24, 2004 interlocutory appeal of the court's denial of his request for grand jury records. (Amended Motion, #6 at 13.)  Respondent argues the claim is meritless, and notes that the Ninth Circuit Court of Appeals ultimately denied Movant's requests to stay the district court proceedings. (Answer, #14 at 12-13.)  Movant does not reply on this claim.

On March 24, 2004, after filing his third[8] interlocutory appeal (CR#236), Movant filed a Motion to Stay (CR#239) the proceedings on the basis of his appeal.  In the order denying the motion, the Court found that it retained jurisdiction (#240), and proceeded with trial.

**Law of the Case** - Subsequently, the Ninth Circuit denied Movant's motion to stay the district court proceedings (#279).  That ruling is the law of the case on the issue whether the district court had jurisdiction to proceed.

Ordinarily, the doctrines of *res judicata* and collateral estoppel do not apply to habeas corpus proceedings. *Sanders v. U.S.,* 373 U.S. 1, 8 (1963). However, the law of the case doctrine is applicable on federal habeas review. *Shore v. Warden,* 942 F.2d 1117, 1123 (7th Cir. 1991). "The law of the case doctrine ordinarily precludes a court from re-examining an

---

[8]  Movant also filed interlocutory appeals on January 20, 2004 (#129) (re motion for clarification, motion for release), February 3, 2004 (#163/165) (re motion to recuse, motion for bail), February 3, 2004 (#164) (re motion to amend, motion to cancel trial), March 18, 2004 (#215) (re motion to retain exhibits), March 19, 2004 (#219) (re motion to cancel trial, etc.), March 22, 2004 (#222) (re motion for election, motion for transcripts), March 30, 2004 (#246) (re motion re release, motion to dismiss), August 6, 2004 (#311) (re motion for release), August 10, 2004 (#313/321) (re motion for acquittal),

issue previously decided by the same court, or a higher appellate court, in the same case." *U.S. v. Caterino,* 29 F.3d 1390, 1395 (9th Cir. 1994) (quoting *U.S. v. Maybusher,* 735 F.2d 366, 370 (9th Cir. 1984), *cert. denied,* 469 U.S. 1110 (1985)). Under this doctrine, a district court will ordinarily refrain from acting if an appellate court previously has issued a decision on the merits of the claim. *U.S. v. Caterino,* 29 F.3d at 1395. Thus, the Ninth Circuit has long held that "[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent petition under § 2255." *Stein v. U.S.*, 390 F.2d 625, 626 (9th Cir. 1968).

To the extent that, by declining to stay the district court proceedings, the Court of Appeals necessarily concluded that the district court retained jurisdiction to proceed despite the pendency of the interlocutory appeals, that decision is the law of this case.

Moreover, the Ninth Circuit ultimately dismissed this appeal (#441) as well as the other consolidated appeals, citing 28 U.S.C. § 1291("jurisdiction of appeals from all final decisions of the district courts")  and *U.S. v. Powell*, 24 F.3d 28, 31 (9th Cir. 1994) (criminal proceeding not final until issuance of sentence), as appealing unappealable orders.

> As a general rule, "[t]he filing of a notice of appeal is an event of jurisdictional significance-it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  This transfer of jurisdiction from the district court to the court of appeals is not effected, however, if a litigant files a notice of appeal from an unappealable order.

*Estate of Conners by Meredith v. O'Connor,* 6 F.3d 656, 658 (9th Cir. 1993).  Thus, because the Court of Appeals determined that the order appealed was unappealable, the district court retained jurisdiction to proceed.

Accordingly, Movant's Ground 7 is without merit and must be denied.


**E.  SUMMARY**

Movant has procedurally defaulted on his claims in Grounds 2 (except that portion asserting a lack of jurisdiction), 3, 4, 5, 6, 8 and 9.  The jurisdictional claims in Ground 2 and Ground 7 are without merit.  Because all of his claims in Grounds 2 through 9 are without merit, his claim of ineffective assistance of appellate counsel in Ground 1 is also without

merit.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Grounds 2 (except that portion asserting a lack of jurisdiction), 3, 4, 5, 6, 8 and 9 of Movant's Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed November 17, 2008 (#6) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the remainder of Movant's Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed November 17, 2008 (#6) be **DENIED**.

## V. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 10, Rules Governing Section 2255 Proceedings. Thereafter, the parties have ten (10) days within which to file a response to the objections.  Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

DATED: October 6, 2009

_____
JAY R. IRWIN
United States Magistrate Judge